IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLARD D. POYER,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 6:11-cv-03040-AA

OPINION AND ORDER

---

Michael W. Franell
724 S. Central Avenue, Suite 113
Medford, Oregon 97501
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Timothy W. Simmons
Assistant United States Attorney
405 E. 8th Avenue, Suite 2400
Eugene, Oregon 97401
    Attorneys for defendant

Page  1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant United States of America moves for partial summary judgment, pursuant to Fed. R. Civ. P. 56, on plaintiff Willard Poyer's medical malpractice and vicarious liability claims. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff received treatment for problems with his right hip through Veteran's Affairs ("VA") medical facilities. Ultimately, plaintiff was referred to the orthopedic department at the Portland VA Medical Center for hip replacement surgery. On January 31, 2007, plaintiff was warned by the VA, in writing, regarding the potential risks of hip replacement surgery, including "leg length discrepancy." Simmons Decl. Ex. A. During an April 2007 pre-operative exam, plaintiff's legs were noted to be of equal length, despite the fact that he was suffering from scoliosis at that time, which can "cause one leg to seem shorter or longer than the other." Franell Decl. Ex. A at 64.

On May 4, 2007, Dr. Carpenter performed hip replacement surgery on plaintiff. On May 9, 2007, plaintiff was transferred to the Rosehaven Nursing and Rehabilitation Center in Roseburg, Oregon. In June 2007, plaintiff identified a leg length discrepancy. Plaintiff communicated this discrepancy to Dr. Carpenter; Dr. Carpenter acknowledged that it appeared there was a discrepancy but refused to provide further treatment.

On April 30, 2009, plaintiff filed a tort claim with the VA.

Page  2 - OPINION AND ORDER

On September 29, 2010, the VA denied plaintiff's claim. In February 2011, plaintiff's prosthesis came loose from the right femur. On February 25, 2011, plaintiff had the prosthesis replaced at a private facility in Arizona; according to plaintiff's surgeon in Arizona, plaintiff's legs are now of equivalent length.

On March 25, 2011, plaintiff filed a complaint in this Court against Dr. Carpenter, Eric Shinseki, and the Portland VA Medical Center, alleging: (1) medical negligence for failure to treat his deep venous thrombosis following surgery; (2) medical negligence for failure to adequately implant his hip prosthesis to maintain substantially equivalent leg lengths; and (3) vicarious and corporate liability. On May 8, 2012, the United States was substituted as the sole defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679. On April 29, 2013, defendant moved for summary judgment on plaintiff's second claim.[1]

---

[1] For the first time in its reply brief, defendant argues that summary judgment is also appropriate on plaintiff's third claim because it is preempted by the FTCA. See Def.'s Reply to Mot. Summ. J. 3. The court ordinarily declines to consider arguments first raised in a reply brief. See Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir. 2004). Defendant is nonetheless correct that plaintiff's vicarious liability claim is redundant now that the United States has been substituted as the sole defendant under the FTCA. See 28 U.S.C. § 2679(d)(1); see also Billings v. United States, 57 F.3d 797, 799-800 (9th Cir. 1995) (purpose of the FTCA is "to remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and . . . instead provide that the exclusive remedy for such torts is through an action against the United States") (citation and internal quotations omitted). Accordingly, because this claim fails as a matter of law, such that providing supplemental briefing would serve no useful purpose, plaintiff's vicarious liability claim is dismissed.

Page  3 - OPINION AND ORDER

## STANDARD

Summary judgment is appropriate if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, if any, "show that there is no genuine dispute as to any material fact and that the [moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Defendant argues that it is entitled to summary judgment on plaintiff's medical malpractice claim because the treatment

Page 4 - OPINION AND ORDER

provided by Dr. Carpenter did not fall below the applicable standard of care.

I. Summary of the Medical Evidence

The parties each rely on expert reports in support of their respective positions. Additionally, the record before the Court contains several other medical reports relating to plaintiff's condition. Accordingly, the Court will summarize the relevant medical evidence of record.

A. Dr. Carpenter

In April and May 2007, Dr. Carpenter performed plaintiff's pre-surgical examination that revealed no leg length discrepancy, as well as plaintiff's hip replacement surgery itself. On September 17, 2007, shortly after completing post-surgery rehabilitation, plaintiff returned to Dr. Carpenter's office "quite upset" and complaining of pain and a leg length discrepancy. Simmons Decl. Ex. F at 1. At that time, Dr. Carpenter reported that "[w]hen the patient stands, it is obvious that his left leg is a little bit short by 1/2 to 1 inch." Id. Because, when seated, plaintiff's "body is completely aligned [and] the medial malleoli are equal," Dr. Carpenter attributed this discrepancy to "scoliosis in [plaintiff's] spine." Id.

B. Dr. Hanson

Since 2004, Dr. Hanson provided plaintiff with monthly chiropractic treatments for his spine. See Poyer Decl. Ex. 3. On March 31, 2008, Dr. Hanson opined:

The very first time I saw Mr. Poyer after his surgery I

Page 5 - OPINION AND ORDER

>   noticed a significant leg length discrepancy of at least
>   one inch. Upon examination of his spine it became
>   apparent that his leg length discrepancy is not the
>   result of anything that has to do with his spine. He did
>   not have any leg length discrepancy before the total hip
>   replacement surgery but after the total hip replacement
>   surgery he did and does have a significant leg length
>   discrepancy.

Id.

### C. Dr. Graboff

Plaintiff retained orthopedic surgeon Dr. Steven R. Graboff to act as his medical expert in this action. On August 2, 2012, Dr. Graboff produced an expert report. See Simmons Decl. Ex. D. After reviewing plaintiff's medical record, including reports from the Roseburg VA and HCS, the Portland VA Medical Center, Hanger Prosthetics, Dr. Carpenter, Dr. Dewsup, Dr. Dutsom, Dr. Hanson, Dr. Ibrahim, Dr. Tong, and Megan Frost, Dr. Graboff opined that, "in spite of the fact that there is no definitive recorded measurement of the legs in any documents[,] given all of the references and identification by the individuals I have identified . . . there is [a] leg length discrepancy of at least 1 inch." Id. at 1-4. Thus, Dr. Graboff concluded that Dr. Carpenter departed from the standard of care by negligently performing plaintiff's right total hip replacement surgery. Id. at 4.

On February 5, 2013, Dr. Graboff was deposed in order to elaborate upon his expert opinion. See Franell Decl. Ex. A. During his deposition, Dr. Graboff testified that plaintiff's scoliosis was unrelated to the leg length discrepancy: "[H]e had that condition prior to May 2007. He had that condition in April of

Page  6 - OPINION AND ORDER

2007, and all of the pre-operative records document, in spite of that, his leg lengths were equal." Id. at 64. Dr. Graboff further reported that x-rays from the period immediately following plaintiff's surgery revealed a patent leg length discrepancy. Id. at 64-70. The doctor also explained how he determined that this discrepancy was "about an inch":

> [T]he medical records where there is a tremendous amount of documentation . . . that it's an inch longer by lots of different providers. Also, the records indicate he needed to use a one-inch lift on the opposite side, and that's really an accurate way to determine the correction of the limb length discrepancy [and] then I also relied on Dr. Carpenter's record [wherein] he documented that he believed that the left side was a half to one inch too short.

Id. at 71.

Finally, Dr. Graboff clarified that he considered a May 2010 computerized tomography ("CT") bone length study conducted by Dr. Linden in forming his expert opinion,[2] but found that it did "not . . . accurately reflec[t] the limb lengths." Simmons Decl. Ex. E at 6. Specifically, Dr. Graboff stated that this report was not accurate because "there [are] no measurement identifiers" and the measurement was generated using the wrong reference point. Franell Decl. Ex. A at 72-80. Moreover, he explained that, while a CT could be clinically accurate, "the most accepted and accurate way to make

---

[2] Prior to his February 2013 deposition, however, Dr. Graboff had not seen the narrative report that accompanies the CT performed by Dr. Linden. See Simmons Decl. Ex. E at 77. Dr. Graboff testified that "[i]f that's an accurate measurement, that would be within the standard of care"; however, for the reasons discussed above, Dr. Graboff questioned the accuracy of Dr. Linden's findings. Id. at 79.

Page  7 - OPINION AND ORDER

a leg length assessment is to physically measure the legs" while the "patient [is lying] down on the table or stand[ing]." Id. at 81; see also id. at Ex. B (Dr. Dutson explaining that he "determine[s] leg length inequality" using the same method).

D. Dr. Linden

Dr. Linden provided treatment to plaintiff at the Roseburg VA. On May 2, 2010, Dr. Linden performed a CT on plaintiff that revealed a leg length discrepancy of approximately 1/4 inch. See Linden Decl. ¶ 2. On April 25, 2013, Dr. Linden provided a declaration in support of defendant's motion for partial summary judgment, in which he criticizes Dr. Graboff's methods and conclusions.[3] Id. ¶¶ 3-5. Specifically, Dr. Linden stated that,

---

[3] Plaintiff objects to defendant's reliance on Dr. Linden's declaration because he was not disclosed as an expert pursuant to Fed. R. Civ. P. 26(a)(2). See Pl.'s Resp. to Mot. Summ. J. 2; see also LR 56-1. A treating physician does not need to be disclosed as an expert witness so long as the physician's testimony is limited to opinions formed during the course of treatment. However, "[w]hen a party fails to make the disclosures required by Rule 26(a), the party [can still] use the witness to supply evidence at trial [provided that the] failure was substantially justified or is harmless." Goodman v. Staples The Office Superstore, L.L.C., 644 F.3d 817, 826 (9th Cir. 2011); see also Fed. R. Civ. P. 26(a), Advisory Committee Notes to 1993 Amendments.

Here, Dr. Linden's opinion, in part, goes beyond what he could have ascertained during the course of treatment. See, e.g, Linden Decl. ¶¶ 3-5 (addressing the February 2013 deposition of Dr. Graboff). To the extent Dr. Linden expresses opinions that were not formed during the course of treatment, defendant is not exempt from the disclosure requirements of Rule 26(a)(2) and has the burden to prove harmlessness or substantial justification for the failure to disclose. Goodman, 644 F.3d at 826. Defendant notes that plaintiff has been in possession of Dr. Linden's treatment records since the inception of this lawsuit. Def.'s

Page 8 - OPINION AND ORDER

contrary to Dr. Graboff's assertion, the proper reference point for leg length measurement is not from the "top of the hip" or the "cup," but rather from the "top of each femoral head." Id. ¶ 5. He also opined that "digital CT radiological images, as displayed on PACS monitors, no longer require mechanical rulers, as software measuring tools inherent to PACS are more accurate and reliable." Id. ¶ 4. Dr. Linden concluded that he employed a medically acceptable method to measure plaintiff's legs, although "[t]here are, however, other accurate ways to assess the pelvis to femur relationship when there is a prosthesis present." Id. ¶ 5.

### E. Dr. Duwelius

Defendant obtained orthopedic surgeon Dr. Duwelius to act as its medical expert. On September 11, 2012, Dr. Duwelius produced an expert report in which he opined that Dr. Carpenter exercised the degree of care, skill, and diligence used by ordinarily careful physicians or surgeons when performing hip replacement surgery. See

---

Reply in Supp. of Mot. Summ. J. 2 n.1. Further, as Dr. Linden was plaintiff's treating physician, plaintiff is personally familiar with Dr. Linden's qualifications and his medical opinion regarding plaintiff's condition. Defendant thus indicates that it "is prepared to seek permission to file a supplemental Rule 26(a) disclosure [because] the failure to disclose the information provided in Dr. Linden's declaration was substantially justified or harmless." Id.

For the reasons discussed in section II, even assuming that Dr. Linden's entire declaration is admissible, summary judgment is inappropriate. Therefore, plaintiff's objection is moot, and I find defendant's failure to disclose harmless. Defendant is granted leave to file a supplemental Rule 26(a) disclosure, and plaintiff may seek limited discovery pertaining to Dr. Linden if necessary. See Goodman, 644 F.3d at 826 (allowing supplemental disclosure to rectify failure).

Simmons Decl. Ex. C at 1-2. In making this assessment, Dr. Duwelius reviewed plaintiff's "VA medical records, as well as the records of subsequent care at various facilities." Id. at 1. Nonetheless, based on Dr. Linden's May 2010 CT, Dr. Duwelius concluded that there was no "evidence of a significant leg length discrepancy." Id. at 2.

II. Defendant's Motion for Partial Summary Judgment

To prevail on a medical negligence claim, the plaintiff must establish "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm." Swanson v. Coos Cnty., 2009 WL 5149265, *5 (D. Or. Dec. 22, 2009) (citing Stevens v. Bispham, 316 Or. 221, 227, 851 P.2d 556 (1993)). "[A]s a general rule, a plaintiff in a medical malpractice case must offer expert testimony that, to a reasonable medical probability, the alleged breach of the standard of care caused the plaintiff's injuries." Chouinard v. Health Ventures, 179 Or. App. 507, 512, 39 P.3d 951 (2002); see also Gulley v. Cook, 1999 WL 805147, *4 (D. Or. Sept. 29, 1999) (citing Getchell v. Mansfield, 260 Or. 174, 179, 489 P.2d 953 (1971)).

The following are undisputed: (1) expert medical testimony is necessary in the case at bar to establish the standard of care and whether it was breached; (2) leg length discrepancy is a known risk

of hip replacement surgery and plaintiff was warned of such a risk prior to surgery; (3) plaintiff suffered from scoliosis prior to surgery but did not manifest any leg length discrepancy; and (4) plaintiff experienced a leg length discrepancy after his surgery. See Def.'s Mem. in. Supp. Mot. Summ. J. 6-8; Pl.'s Resp. to Mot. Summ. J. 3-4. Further, at least for the purposes of this motion, the parties agree on the applicable standard of care: some leg length discrepancy following hip replacement surgery is to be expected, but a discrepancy greater than 1/2 inch violates the standard of care. See Def.'s Mem. in Supp. Mot. Summ. J. 4 n.2; Pl.'s Resp. to Mot. Summ. J. 3.

Here, while Dr. Linden's and Dr. Duwelius's reports are sufficient to meet defendant's initial burden, the Court finds that genuine issues of material fact remain regarding whether the standard of care was breached in the case at bar. Defendant is correct that "[t]he CT bone length study clearly establishes that the leg length discrepancy falls within the standard of care [and] Plaintiff lacks an specific measurements that contradict the CT bone length findings." Def.'s Mem. in Supp. of Mot. Summ. J. 11. However, a plethora of other evidence exists, including visual inspections, physical measurements, x-rays, and plaintiff's one-inch corrective orthotic insole, indicating that plaintiff's leg length discrepancy was greater than 1/2 inch. See Franell Decl. Ex. A; Poyer Decl. Ex. 3; Simmons Decl. Exs. D & F. In fact, Dr.

Page 11 - OPINION AND ORDER

Carpenter himself noted that plaintiff had a leg length discrepancy of 1/2 to 1 inch. See Simmons Decl. Ex. F at 1.[4] Further, Dr. Graboff opined that plaintiff's one-inch corrective orthotic insole was "really an accurate way to determine . . . the limb length discrepancy." Franell Decl. Ex. A at 71; see also Linden Decl. ¶ 5 (conceding that the CT is not the only accurate and clinically acceptable method for measuring a leg length discrepancy). In sum, there is medically acceptable evidence in the record demonstrating that plaintiff suffered from a leg length discrepancy of more than 1/2 inch, such that a genuine issue of material fact exists as to this issue.

Moreover, while the Court acknowledges Dr. Linden's April 2013 opinion, it does not change the outcome of this case. As defendant notes, Dr. Linden's declaration states that, "[t]o the extent that Dr. Graboff criticizes the CT bone length study, [those] criticisms are unfounded." Def.'s Mem. in Supp. of Mot. Summ. J. 9. However, even assuming that Dr. Linden's declaration is admissible to rebut the validity of Dr. Graboff's opinion, the Court may not make "[c]rediblity determinations or weigh the evidence" at this stage

---

[4] Although Dr. Carpenter attributed this discrepancy to plaintiff's scoliosis, other evidence in the record suggests that this conclusion may have been erroneous; in any event, a genuine issue of material fact endures concerning whether plaintiff suffered from a leg length discrepancy of greater than 1/2 inch and, if so, whether that discrepancy is attributable plaintiff's scoliosis or Dr. Carpenter's surgery. Compare Simmons Decl. Ex. F at 1, with Poyer Decl. Ex. 3 and Franell Decl. Exs. A & B.

Page  12 - OPINION AND ORDER

in the proceedings and summary judgment remains improper. <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 150 (2000).

Accordingly, viewing the evidence in the light most favorable to plaintiff, genuine issues of material fact exist concerning the proper method to measure leg length and whether plaintiff's leg length discrepancy was greater than 1/2 inch. Therefore, defendant's motion is denied.

## CONCLUSION

Defendant's partial motion for summary judgment (doc. 40) is GRANTED with respect to plaintiff's vicarious liability claim and DENIED in all other respects. Accordingly, plaintiff's Third Claim for Relief is DISMISSED.

IT IS SO ORDERED.

Dated this 3rd of Sept. 2013.

_____
Ann Aiken
United States District Judge

Page  13 - OPINION AND ORDER